# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                        Case No: 23-cr-13-KKM-CPT

MICHAEL LUCAS AMBROSE,

    Defendant.
_____

## <u>ORDER</u>

A grand jury indicted Michael Lucas Ambrose for two counts of coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such illicit activity, one count of distributing child pornography, and one count of possessing child pornography. Superseding Indictment (Doc. 63); *see* 18 U.S.C. §§ 2251(a) and (e), 2252(a)(2), (a)(4)(B), and (b)(1)–(2). Ambrose moves to suppress any evidence of his receipt or distribution of child pornography provided by Snap, Inc., to the National Center for Missing and Exploited Children (NCMEC) and any evidence derived from such evidence, and the government objects. Mot. to Suppress (MTS) (Doc. 38); Resp. (Doc. 47).

To acquire evidence suggesting that Snap was a state actor when it provided this evidence to NCMEC, Ambrose sought discovery from both the government and Snap. With respect to the government, Ambrose sought an order compelling the government to provide alleged communications between the government and Snap concerning Snap's end-to-end encryption. Mot. to Compel (MTC) (Doc. 72). The Magistrate Judge denied Ambrose's motion, MTC Order (Doc. 174), and Ambrose has objected, MTC Objs. (Doc. 177).

With respect to Snap, Ambrose issued three subpoenas—two seeking evidence of communications between the government and Snap and one seeking the testimony of former Snap employee Subhash Sankuratripati. Snap moved to quash all three. First Mot. to Quash (MTQ) (Doc. 142); Second Mot. to Quash (Doc. 170). Snap also requested that certain information concerning its encryption decisions remain under seal. Mot. to Seal (Doc. 130). The Magistrate Judge denied the motion to seal and granted in part and denied in part the motions to quash. MTQ Order (Doc. 227). Snap has objected to this order. MTQ Objs. (Doc. 233); *see also* (Doc. 232) (public redacted version).

For the below reasons, I overrule the objections.

## I.    BACKGROUND

During a separate investigation of a sex crime involving A.S., a twelve-year-old child, FBI field offices in Lakeland, Florida, and Newark, New Jersey, learned that A.S. was in communication with Ambrose. Resp. at 3. These communications revealed that the two were in an amorous relationship. *Id.* at 6–7. Ambrose used various telephone numbers to communicate with A.S. and a subpoena of subscriber information for one of those numbers revealed an IP address. *Id.* at 3. The Newark field office submitted a request to NCMEC regarding this IP address and NCMEC returned two positive results for "apparent child pornography" that Snap reported. *Id.* at 4–5. Officers eventually detained Ambrose and, after a *Miranda* warning, Ambrose admitted to possessing child pornography and asking A.S. to produce child sexual abuse material. *Id.* at 10–11. Through search warrants, officers discovered approximately 17,300 images and 70 videos of child sexual abuse material on Ambrose's devices. *Id.* at 12.

After a grand jury indicted Ambrose with distributing and possessing child pornography (Doc. 14),[1] Ambrose moved to suppress:

> (1) any evidence of his receipt or distribution of child pornography provided by social media companies to the National Center for

---

[1] A superseding indictment added the coercion charges. *See* Superseding Indictment.

3

Missing and Exploited Children (NCMEC) and (2) any evidence derived from such evidence, including (a) admissions made by Mr. Ambrose and (b) evidence from Mr. Ambrose's electronic devices.

MTS at 1. Among other things, Ambrose argues that Snapchat, in forwarding his pornographic messages to NCMEC, acted as a government agent. *Id.* at 11–18.

Ambrose theorizes that Snapchat's use of end-to-end encryption may have been shaped by the government's law enforcement priorities. *See* MTC Objs. at 2–9. To support this argument, Ambrose seeks communications between the government and Snap concerning Snap's employment of end-to-end encryption. Ambrose first moved, under Federal Rule of Criminal Procedure 16(a)(1)(E) and *Brady v. Maryland*, 373 U.S. 73 (1963), to compel the government to produce:

> [N]otice or any record or copy of any communication made between January 2018 and the present between any government officer or employee of any government agency, or any government agent, and Snap Inc. or any agent of Snap Inc., relating to Snap's institution, continuation, or discontinuation of end-to-end encryption for any of its products, including but not limited to any oral statement, meeting minutes, text message, email, letter, or other communication.

MTC at 1. The government agreed to produce any communications between Snap and the individual FBI case agents involved in the case but represented that no such communications existed. (Doc. 81) at 2. After the Magistrate Judge held oral argument on the motion and both sides submitted supplemental authority (Docs.

84, 96, 99), the Magistrate Judge denied Ambrose's motion, *see* MTC Order. Ambrose has objected to this order. *See* MTC Objs.

Ambrose also sought discovery from Snap. In his first subpoena, Ambrose requests:

> (a) any record or copy of any communication occurring on or after January 1, 2018, between any government officer, employee, or agent, and Snap Inc. or any of its officers, employees, or agents, relating to Snap Inc.'s institution, continuation, or discontinuation of end-to-end encryption for any of its Snapchat products, including but not limited to any note or recording of any oral statement, meeting minutes, text message, email, letter, or similar communication, and
>
> (b) any record or communication relating to any policy decision made by Snap Inc. to discontinue end-to-end encryption on any of its Snapchat products, such as any memorandum, meeting minutes, text message, email, letter, or similar record or communication.

(Doc. 142-2) at 2. The second subpoena seeks to compel Subhash Sankuratripati, a former Snap employee, to testify at a hearing on the motion to suppress. (Doc. 142-3). In 2019, Sankuratripati delivered a presentation concerning Snap's end-to-end encryption policies. First Mot. to Quash at 10–11. Snap moved to quash both subpoenas. *See generally* First Mot. to Quash. Ambrose then served a third subpoena on Snap, which requests:

5

> Any record or communication produced on or between January 8, 2019, and November 10, 2022, relating to any policy decision made by Snap, Inc. to forgo implementing end-to-end encryption on any of its Snapchat products, such as any memorandum, meeting minutes, text message, email, letter, or similar record or communication.

(Doc. 168) at 3. Snap moved to quash this subpoena too. *See* Second Mot. to Quash.

Snap also moved for leave to redact information concerning its encryption practices from its motions, Ambrose's responses, and related filings. *See* Mot. to Seal.

After holding oral argument, the Magistrate Judge granted in part and denied in part Snap's motions. As relevant here, the Magistrate Judge denied Snap's motion for leave to redact information concerning its encryption practices and denied Snap's motion to quash the second subpoena, which concerns the testimony of Sankuratripati. MTQ Order at 24–41, 59–65. Snap has objected to both rulings. MTQ Objs.; *see also* (Doc. 232) (public redacted version).

## II.    LEGAL STANDARD

If a party (or a non-party) timely objects to a magistrate judge's order on "any matter that does not dispose of a charge or defense," the district judge must "modify or set aside any part of the order that is contrary to law or clearly erroneous." FED. R. CRIM. P. 59(a). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.' " *S.E.C. v. Kramer*, 778 F. Supp. 2d

1320, 1327 (M.D. Fla. 2011) (quoting *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

## III.    ANALYSIS

Ambrose argues that the Magistrate Judge's order denying his motion to compel must be set aside under Rule 59(a). *See* MTC Objs. Snap argues that the same is true concerning the Magistrate Judge's order denying the motion to quash the second subpoena and the motion to partially seal. *See* MTQ Objs.

### A. Order on the Motion to Compel

Ambrose moved to compel under both Federal Rule of Criminal Procedure 16(a)(1)(E)(i) and *Brady*. *See* MTC at 11. His objections focus on the Magistrate Judge's application of Rule 16(a)(1)(E)(i). In the light of the Eleventh Circuit's decision in *United States v. Laines*, in which the court concluded that evidence related to the illegality of a seizure was "not 'material either to guilt or to punishment' as required under *Brady*," 69 F.4th 1221, 1232 (11th Cir. 2023) (quoting *Brady*, 373

U.S. at 87), Ambrose seeks only to preserve his *Brady* argument for appeal, MTC Objs. at 13.

Rule 16(a)(1)(E)(i) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." The Magistrate Judge concluded that Ambrose failed to demonstrate that the evidence he sought was in the government's possession and material to preparing his defense. MTC Order at 16–28. Ambrose challenges these conclusions.

### 1. Possession

The Magistrate Judge concluded that Ambrose's Rule 16 request and his subsequent motion to compel were "wanting on the issue of possession." MTC Order at 22. The Magistrate Judge rejected Ambrose's argument that, for Rule 16 purposes, the "government" "should encompass the DOJ, the FBI, the DEA, and theoretically any other government entity that has communicated with Snap about end-to-end encryption during the relevant period, irrespective of any relationship (or lack thereof) they may have to the investigation [of Ambrose's case]." *Id.* at 23.

Ambrose objects on the basis that the ordinary meaning of "government" includes the Department of Justice and the FBI. MTC Objs. at 13–14. He faults the Magistrate Judge for relying on cases that do not consider whether " 'the government' includes officials superior to the prosecutor" and for interpreting Rule 16 "in accordance with policy concerns." *Id.* at 14–19.

Caselaw and Rule 16's text teach that "the government" means the prosecution team and those government agents working closely in concert with it— not their superiors or all government agents or entities working within the same office or department. In this context, "[b]inding precedent has construed the term 'government' in Rule 16(a)(1) to refer to the 'defendant's adversary, the prosecution,' given the 'repeated references to "the attorney for the government" in 16(a)(1)(A), (B) and (D) and 16(a)(2),' and language in 16(a)(1)(C) referring to papers and documents 'intended for use by the government as evidence in chief at the trial.' " *United States v. Brazel*, 102 F.3d 1120, 1150 (11th Cir. 1997) (quoting *United States v. Trevino*, 556 F.2d 1265, 1271 (5th Cir. 1977));[2] *accord United States v. Bailey*, 762

---

[2] In the current version of Rule 16, references to "the attorney for the government" appear in 16(a)(1)(B)(i), (D), and (F)(ii), references to the government's "case-in-chief at trial" appear in 16(a)(1)(E)(ii) and (F)(iii), and references to the government's "case-in-chief" appear in 16(a)(1)(G)(i) and (G)(iii).

F. App'x 698, 702 (11th Cir. 2019) ("[W]e have held for purposes of criminal discovery rules that the phrase 'within the possession, custody, or control of the government' does not include possession of a statement by persons who are not a part of the prosecution's team, such as when a statement is possessed by a federal or state court, probation officers, or local law enforcement officers."). The Eleventh Circuit has also interpreted the term "government" to include a "governmental investigatory agency closely connected to the prosecutor." *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003).[3]

In *Trevino*, for example, the former Fifth Circuit affirmed the denial of discovery of a presentence investigative report in the possession of the probation officer because "neither the prosecutor nor any governmental unit aligned with him in the prosecution" had possession of the report. 556 F.2d at 1272. And in *Brazel*, the Eleventh Circuit held that the district court did not abuse its discretion in refusing relief under Rule 16(a)(1)(A) when the government failed to produce two state court pleas. 102 F.3d at 1150. The Eleventh Circuit concluded that "within the

---

[3] Both *Brazel* and *Jordan* interpreted a precursor provision to Rule 16(a)(1)(E), but the changes made were not substantive. *See United States v. Brandon*, 636 F. App'x 542, 546 n.3 (11th Cir. 2016) (per curiam).

possession, custody, or control of the government" does "not include [possession] of a state court." *Id.*

The Court of Appeals has regularly concluded, though, that evidence in the possession of an investigative unit closely connected to the prosecution was evidence in the possession of the government for the purposes of Rule 16. *See, e.g.*, *United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir. 1978) ("Nor is the government excused from its obligation by the fact that the documents were in the possession of the FBI prior to trial."); *United States v. James*, 495 F.2d 434, 436 (5th Cir. 1974) (evidence possessed by special agent of the Bureau of Narcotics and Dangerous Drugs); *cf. United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979) (concluding, in a case concerning *Giglio v. United States*, 405 U.S. 150 (1972), that knowledge of a state prosecutorial team "must be imputed to the federal team" where "extensive cooperation" existed between the two). Taken together, these cases teach that Rule 16(a)(1)(E)(i) reaches the prosecution team and those government agents working closely in concert with it—not all government agents or subdivisions operating within the same agency or department.

Ambrose argues that none of these cases are relevant and instead points to only a single case—*United States v. Ghailani*, 687 F. Supp. 2d 365 (S.D.N.Y.

2010)—that concerns the "prosecutor's superiors." MTC Objs. at 16. But as the Magistrate Judge concluded, "*Ghailani* undercuts rather than buttresses Ambrose's position here." MTC Order at 26. *Ghailani* concerned the prosecution of an alleged member of Al Qaeda. 687 F. Supp. 2d at 366. In moving to dismiss the indictment on speedy trial grounds, the defendant sought evidence in the possession of the Department of Justice regarding the government's reasons for delaying his prosecution. *Id.* at 367–68. In interpreting "the government" in Rule 16, the district court rejected the idea that the phrase "encompass[ed] the entirety of the federal government" and rejected the government's position, which was that "the government" means only "others acting on the government's behalf in the case." *Id.* at 370–71. Instead, opting for a "practical interpretation of Rule 16" the district court concluded that "responsible officials within the [Department of Justice] who were involved in making the [detainment and prosecutorial decisions at issue] were sufficiently involved with the prosecution properly to be considered 'the government' for Rule 16 purposes," "[e]ven if those officials had no other involvement with Ghailani's investigation or prosecution." *Id.* at 372.

Ambrose identifies no precedent adopting his reading or endorsing the proposition that, in each federal prosecution, a defendant is entitled to impose on

the prosecution the duty to inquire of every federal agency and employee. *Cf. United States v. Libby*, 429 F. Supp. 2d 1, 6 (D.D.C. 2006) ("[T]o require the government to search the files of every agency in the Executive Branch 'would not only wreak havoc, but would give the defense access to information not readily available to the prosecution.' " (quoting *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989))). Even *Ghailani*, the one case Ambrose identifies concerning "the prosecutor's superiors," MTC Objs. at 16, rejects his capacious reading of "government" in Rule 16(a)(1)(E). While Ambrose faults the Magistrate Judge for failing to focus "on the text of the Federal Rules of Criminal Procedure," MTC Objs. at 18, Ambrose's reading fails to account for context, *see Brazel*, 102 F.3d at 1150 (describing the term how the term "government" is used throughout Rule 16(a)), which is the lodestar of all textual interpretation, *see Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (explaining that, to discern "ordinary meaning," words must be "interpreted 'in their context,' not in isolation" (quotation marks omitted) (quoting *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 608 (2019))); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 2, at 56 (2012) ("[W]ords are given meaning by their context.").

13

Rule 16's reference to "government" is best understood to mean "the prosecution,"
not the federal government at large. *Trevino*, 556 F.2d at 1271.

For these reasons, Ambrose has not met his burden of showing that the
Magistrate Judge's interpretation of Rule 16(a)(1)(E)'s possession requirement is
contrary to the law.[4]

### 2. Materiality to Ambrose's Defense

Even if Ambrose was correct that the Magistrate Judge erred in interpreting
Rule 16(a)(1)(E)'s possession requirement, he fails to show that the sought-after
discovery is "material to preparing [his] defense." FED. R. CRIM. P. 16(a)(1)(E)(i).
To meet this requirement, the defendant must show "more than that the [item] bears
some abstract logical relationship to the issues in the case." *Jordan*, 316 F.3d at 1251
(alteration in the original) (quoting *United States v. Buckley*, 586 F.2d 498, 506 (5th
Cir. 1978)). Instead, the defendant must provide "some indication that the pretrial
disclosure of the item would enable the defendant significantly to alter the quantum
of proof in his favor." *Id.* (cleaned up) (quoting *Buckley*, 586 F.2d at 506). The
Supreme Court has interpreted Rule 16(a)(1)(E)(i) to allow for discovery in aid of

---

[4] This conclusion holds even if Ambrose's request is limited to the FBI and DOJ. *See* MTC Order
at 28 n.21.

the defendant's attempt to "refute the Government's arguments that the defendant committed the crime charged," but not in aid of the defendant's attempt to challenge "the prosecution's conduct of the case." *United States v. Armstrong*, 517 U.S. 456, 462 (1996).[5] Thus, in a case concerning a selective-prosecution claim, the Court held that Rule 16(a)(1)(E) allows "defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id.* at 463.

The Magistrate Judge concluded that Ambrose could not establish materiality in the light of the "sheer breadth" of his discovery request, which requests "that the government produce '*any* record or copy of *any* communication' for more than a six-year period between Snap and '*any* government officer or employee of *any* government agency, or *any* government agent' relating to Snap's institution,

---

[5] *Armstrong* interpreted a precursor provision, then codified at Federal Rule of Criminal Procedure 16(a)(1)(C). At the time of *Armstrong*, that provision provided:

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

This provision is materially the same as the current version of Rule 16(a)(1)(E), and thus I rely on *Armstrong*. *See* MTC Objs. at 22 n.1 (Ambrose agreeing that there were no "substantive change[s]").

continuation, or discontinuation of end-to-end encryption 'for *any* of its products.'" MTC Order at 16–17 (emphasis in the original) (quoting MTC at 1, 10–11). The Magistrate Judge also noted that a "fair amount of the proof [Ambrose] relies on to show that the government purportedly exerted pressure on social media companies regarding end-to-end encryption does not expressly relate to Snap." *Id.* at 17. Finally, the Magistrate Judge determined that materiality was lacking in the light of *Armstrong. Id.* at 18–22.

Ambrose objects and argues that the Magistrate Judge erred in focusing on the breadth of the requested discovery and in applying a heightened materiality standard. MTC Objs. at 19–21. Ambrose also argues that the Magistrate Judge erred in concluding that the sought-after discovery, relevant to Ambrose's motion to suppress, does not qualify as evidence material to his "defense." *Id.* at 21–25. Ambrose challenges the Magistrate Judge's reliance on *Armstrong* but argues that he prevails even if *Armstrong* applies. *Id.* at 22–25.

The Magistrate Judge's decision was not contrary to law. Most importantly, the Magistrate Judge did not err in concluding that *Armstrong* provides reason for "pause as to the merits of Ambrose's Rule 16 materiality claim." MTC Order at 18. According to *Armstrong*, Rule 16(a)(1)(E)(i) "authorizes defendants to examine

16

Government documents material to the preparation of their defense against the Government's case in chief." 517 U.S. at 463. Ambrose, though, seeks to employ Rule 16(a)(1)(E) for an entirely different purpose. The materials Ambrose seeks have no bearing on whether he committed the charged offenses. Instead, they are relevant only to Ambrose's attempt to exclude "reliable, trustworthy evidence bearing on guilt or innocence." *Davis v. United States*, 564 U.S. 229, 237 (2011). In other words, Ambrose wants to use Rule 16(a)(1)(E)(i) to discover evidence "material to the preparation" of a "sword" claim that challenges the government's conduct of the case. Because *Armstrong* rejects this reading of Rule 16(a)(1)(E)(i), the Magistrate Judge did not err in denying Ambrose's motion. *See, e.g.*, *United States v. Williams*, No. 1:22-CR-8 (LAG), 2023 WL 2061164, at *3 (M.D. Ga. Feb. 16, 2023) ("The Motion to Suppress, for which Defendant seeks to compel the discovery, is a 'sword' defense outside the scope of Rule 16."); *see also United States v. Sanders*, 106 F.4th 455, 473–74 (6th Cir. 2024) (en banc) (concluding that the district court did not abuse its discretion in denying discovery under Rule 16(a)(1)(E)(i) of evidence relevant to the defendant's challenge to the "warrant authorizing the search of the apartment," but suggesting that "unique circumstances" may counsel a different

result when a defendant moves to "suppress evidence gathered from a warrantless search").

Ambrose responds that *Armstrong*'s interpretation of Rule 16(a)(1)(E)(i) is dicta "because the Court considered only claims of selective prosecution" and assumed later in the opinion that "discovery would be available if the defendant could make the appropriate threshold showing." MTC Objs. at 22; 517 U.S. at 463. Neither of these rejoinders provide reason to part from the Supreme Court's interpretation, which was "necessary" to the Supreme Court's holding regarding the availability of discovery under Rule 16(a)(1)(E)(i). 517 U.S. at 463; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). The Supreme Court addressed Rule 16(a)(1)(E)(i), which neither the district court nor the court of appeals below had mentioned, because the respondents in *Armstrong* argued "that it support[ed] the result reached by the Court of Appeals"—that is, that discovery was available for selective prosecution claims— which the Supreme Court ultimately reversed. 517 U.S. at 461. In disposing of that argument by concluding that "Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the

18

Government's case in chief, but not to the preparation of selective-prosecution claims," it was central to the Court's reasoning that it "conclude[d] that in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief." *Id.* at 462–63. While the Court later "assumed that discovery would be available" some way as it proceeded to assess the threshold standing for obtaining discovery for selective-prosecution claims, neither the majority nor the separate writings suggest that it was unnecessary for the Court to address the argument that Rule 16 supported the court of appeal's holding. *Id.* at 463.

Ambrose points to *United States v. Soto-Zuniga*, 837 F.3d 992 (9th Cir. 2016), which took a more limited view of *Armstrong*'s holding. There, the Ninth Circuit concluded that the district court abused its discretion in denying the defendant's motion for discovery of evidence related to a Fourth Amendment challenge to a checkpoint search. *Id.* at 998–99. The Ninth Circuit reached this result "[n]otwithstanding" *Armstrong*'s "language and guidance" as to Rule 16(a)(1)(E)(i)'s reach. *Id.* at 1000. Instead, the Ninth Circuit relied on circuit precedent and an *Armstrong* concurrence, in which Justice Ginsburg opined that, in her view, the *Armstrong* Court "decided a precise issue" and "was not called upon to decide"

19

whether Rule 16(a)(1)(E)(i) applied to, for example, "affirmative defenses unrelated to the merits," 517 U.S. at 471 (Ginsburg, J., concurring).[6]

Like the Magistrate Judge, I find *Soto-Zuniga* "unconvincing." MTC Order at 21. The "language and guidance" of *Armstrong*'s majority opinion is a surer guidepost than a concurring opinion, and the *Armstrong* majority's interpretation of Rule 16(a)(1)(E)(i) carries beyond the facts of that case. Other decisions reaching the same result as *Soto-Zuniga* are equally uncompelling. *See, e.g.*, *United States v. Sanders*, 107 F.4th 234, 253 (4th Cir. 2024).

Ambrose's last argument is that his Fourth Amendment claim is a "shield" rather than a "sword" because, by filing the motion to suppress, he seeks to "narrow the scope of the Government's case-in-chief." MTC Objs. at 24. Unlike a selective prosecutive claim, Ambrose says, even if his motion to suppress is granted in full, the Government may proceed with the case. *Id.* Regardless of the effect of Ambrose's motion, this does not mean his Fourth Amendment claim qualifies as a "defense on the merits to the criminal charge itself." *Armstrong*, 517 U.S. at 463. As explained,

---

[6] In separate concurrences, Justice Souter joined the majority opinion's "discussion of Federal Rule of Criminal Procedure 16 only to the extent of its application to the issue in this case" 517 U.S. at 471 (Souter, J., concurring), and Justice Breyer disagreed with the majority opinion's interpretation of the Rule, *see id.* at 471–76 (Breyer, J., concurring in part and concurring in the judgment). Even so, the *Armstrong* majority opinion received five unqualified votes.

Ambrose's constitutional argument is not meant to "refute the Government's arguments that [he] committed the crime[s] charged," *id.* at 462, but instead to suppress evidence of guilt based on the alleged unlawfulness of the collection methods. This a prototypical sword, not a shield. *See United States v. Thomas*, 548 F. Supp. 3d 1212, 1219 (M.D. Fla. 2021) ("Rule 16 'was not meant to extend to issues not impacting the defendant's culpability.' " (quoting *United States v. Brinson*, 208 F. App'x 420, 423 (6th Cir. 2006))).

In sum, the Magistrate Judge did not arrive at a decision contrary to law in relying on *Armstrong* to deny Ambrose's motion to compel because a motion to suppress is not a "defense" under Rule 16(a)(1)(E)(i). Because Ambrose's Fourth Amendment argument is not a "defense" as *Armstrong* defines it, I need not reach Armstrong's objection to the subsidiary question of whether the discovery sought is material to that defense. *See* MTC Objs. at 19–21; *see also* FED. R. CRIM P. 16(a)(1)(E)(i). I therefore overrule Ambrose's objections.

### B. Order on the Motions to Quash and Motion to Partially Seal

Snap objects to the Magistrate Judge's denials of the motion to quash Sankuratripati's testimony and of the motion to partially seal. MTQ Objs.

1. Motion to Quash

Under Federal Rule of Criminal Procedure 17(a), a defendant may subpoena a witness to testify. "Generally, Rule 17(a) subpoenas may issue where a defendant seeks testimony that is relevant and material to the issue being litigated." *United States v. Bebris*, 4 F.4th 551, 559 (7th Cir. 2021). As a result, a district court does not abuse its discretion when declining to issue a subpoena for a witness who "would have provided testimony which was cumulative or immaterial to the defense." *United States v. Beasley*, 479 F.2d 1124, 1128 (5th Cir. 1973).[7] Rule 17(a) is also unavailable for "fishing expedition[s]." *Bebris*, 4 F.4th at 560 (quoting *United States v. Nixon*, 418 U.S. 683, 700 (1974)). If the defendant "shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense," then, upon an ex parte application, the court "must order that a subpoena be issued for a named witness." FED. R. CRIM. P. 17(b); *see United States v. Muho*, 978 F.3d 1212, 1219 (11th Cir. 2020).

Although Rule 17 does not enumerate a procedure for quashing or modifying a subpoena compelling attendance of a witness, courts have entertained motions

---

[7] In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to the close of business on September 30, 1981. 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

seeking such relief and determined that "a subpoena ad testificandum [or a subpoena compelling the attendance of a witness] survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." *Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000).

In denying Snap's motion to quash, the Magistrate Judge concluded that Ambrose met the relevance and materiality requirements because Sankuratripati, based on his 2019 presentation and his tenure and elevated role at Snap, should be able to address contested issues, such as Snap's encryption practices. *See* MTQ Order at 62. Ambrose seeks to use this testimony to prove that Snap acted as a government agent by limiting its use of end-to-end encryption and, as a result, increasing its reporting to the NCMEC, including of evidence relevant to Ambrose's prosecution. *See id.* at 5–6. Snap challenges the Magistrate Judge's conclusion on three bases.

First, Snap argues that the Magistrate Judge's decision was predicated on speculation about Sankuratripati's testimony. MTQ Objs. at 7–9. Snap contends that Ambrose fails to show that Sankuratripati's testimony is "relevant and necessary." *Id.* at 7 (emphasis removed). I overrule this objection. To start, Snap did not raise a necessity argument in its motion to quash. I therefore exercise my discretion and decline to address that argument now in review of the Magistrate

23

Judge's decision. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). As for relevance, the Magistrate Judge did not clearly err by agreeing with Ambrose. Based on his 2019 presentation and his experience as Snap's Director of Security Engineering, Sankuratripati will be able to testify about Snap's use of end-to-end encryption during the relevant time. It is hardly speculation to conclude that this testimony will be at least relevant to the merits of Ambrose's Fourth Amendment arguments, which turn in part on Snap's use of end-to-end encryption.

Snap next argues that the Magistrate Judge's denial of the motion to quash the subpoena ad testificandum is inconsistent with the Magistrate Judge's quashal of the document subpoenas. MTQ Objs. at 9–11; *see John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1139 (10th Cir. 2008) ("[I]nternally inconsistent findings constitute clear error."). I disagree. The Magistrate Judge's decision to quash the two document subpoenas was predicated largely on the subpoenas' lack of specificity. *See* MTQ Order at 48–55 ("Ambrose here merely explains the basis for his subpoena but fails to adequately delineate—as he must—what the requested materials contain."). This lack of specificity—demonstrated by the sweep of the subpoenas—

24

contributed to the Magistrate Judge's short discussion of relevance. *See id.* at 56 ("[I]t

appears that even if Snap's hypothetical decisions related to end-to-end encryption

are relevant, part (a) the First Subpoena and the whole of the Third Subpoena almost

certainly would necessitate the review of a vast array of records and communications

that would ultimately be deemed to be extraneous to this case."). The overbreadth

and burdensomeness section followed a similar line. *See id.* at 59 ("The Court finds

Snap's overbreadth and burdensomeness argument persuasive for the reasons offered

by Snap and those identified by the Court in connection with the specificity and

relevancy prongs of its *Nixon* analysis.").

The subpoena directed at Sankuratripati does not suffer from these flaws, and

thus the Magistrate Judge's conclusions are not inconsistent. Ambrose seeks

Sankuratripati's testimony about Snap's end-to-end encryption practices. This

request does not suffer from a lack of specificity, irrelevance, or overbreadth. Because

the Magistrate Judge's conclusions are not inconsistent, I overrule this objection.

Snap next argues that Sankuratripati's testimony is unnecessary to adjudicate

Ambrose's motion to suppress. MTQ Objs. at 12–14. Snap cites a declaration from

David Boyle, its Senior Director of Product, covering the development of Snap's

end-to-end encryption and the difference between "Snaps" and "Chat Media,"

among other things. *See* (Doc. 142-1). As explained, Snap did not present its necessity argument to the Magistrate Judge, which would normally preclude consideration. *See Williams*, 557 F.3d at 1292. But Snap argues that an "express finding of clear error" is not needed to quash the subpoena because the Magistrate Judge presumed in reaching his decision that "Ambrose's Fourth Amendment state actor argument cannot be resolved by the presiding District Judge predicated solely on the record already before the Court." MTQ Order at 62. Because a court "may rely on hearsay" at a suppression hearing, *United States v. Raddatz*, 447 U.S. 667, 679 (1980), Snap argues that I may rely on Boyle's declaration to decide Ambrose's motion and that, as a result, Sankuratripati's testimony would be cumulative.

Snap relies primarily on the Seventh Circuit's decision in *Bebris*. There, the defendant's motion to suppress relied on the argument that Facebook acted as a government agent by monitoring its platform and reporting to NCMEC images of child pornography. 4 F.4th at 554. In response to a subpoena requesting testimony, Facebook filed a declaration from its Project Manager for Safety on the Community Operations team and moved to quash the subpoena. *Id.* at 555. The district court quashed the subpoena and relied on the declaration, among other evidence, in denying the motion to suppress. *Id.* at 561–62. The Seventh Circuit affirmed. *See id.*

26

at 562 ("Because the sought-after live testimony as to the nature of the cooperation between Facebook and NCMEC would have been cumulative of Facebook's declaration (which itself was corroborated by NCMEC testimony), the district court did not abuse its discretion in quashing the Facebook subpoena.").

Although *Bebris* supports a district court's discretion to quash a subpoena in circumstances somewhat like these, it does not follow that a district court abuses its discretion in refusing to quash a subpoena in said circumstances. Unlike in *Bebris*, Snap directs the Court to a single declaration without the support of any live testimony. MTQ Objs. at 12–13; *cf.* 4 F.4th at 561 (rejecting the argument that the district court relied on the declaration "without any tested factual support" because "NCMEC Vice President Shehan testified that Facebook's relationship with NCMEC was 'completely voluntary'"). Therefore, at this time, Snap has not convinced the Court that Ambrose's argument can "be resolved . . . predicated solely on the record already before the Court." MTQ Order at 62; *cf. Brown v. Shalala*, 44 F.3d 931, 936 (11th Cir. 1995) ("[T]he value of live testimony . . . cannot be discounted.").

Finally, Snap argues that testifying would be unduly burdensome on Sankuratripati and Snap. MTQ Objs. at 14–15. As the Magistrate Judge recognized,

MTQ Order at 48, a "court may quash a subpoena 'if compliance would be unreasonable or oppressive.'" *In re Grand Jury No. 76-3 (MIA) Subpoena Duces Tecum*, 555 F.2d 1306, 1308 (5th Cir. 1977) (citing FED. R. CRIM. P. 17(c)). This exception must be given a "common sense meaning," *United States v. Cory*, No. 3:20-CR-99-MMH-JRK, 2021 WL 3709797, at *4 (M.D. Fla. Aug. 20, 2021) (citation omitted), *objections overruled*, No. 320CR99S1MMHLLL, 2022 WL 997336 (M.D. Fla. Apr. 1, 2022), and it does not cover those ordinary costs that "can be anticipated in complying with any subpoena," *In re Grand Jury No. 76-3*, 555 F.2d at 1308. Shorn of argument that the evidence sought is immaterial and cumulative, Snap contends that the subpoena is unduly burdensome because it would require Sankuratripati "to take time out of his schedule to testify" and would "expose in live witness testimony sensitive, non-public information about its security practices." MTQ Objs. at 15. Having to travel to give testimony is an ordinary burden of responding to a subpoena. *See In re Grand Jury No. 76-3*, 555 F.2d at 1308. And as Snap itself claims that it "has already provided in sworn declarations and submissions before this Court" everything relevant to which Sankuratripati might testify, Snap has not shown that it will be additionally burdened by Sankuratripati testifying.

MTQ Objs. at 12. Snap has thus not shown that the subpoena is "unreasonable or oppressive." FED. R. CIV. P. 17(c)(2).

None of Snap's arguments, materially the same as the arguments Snap made to the Magistrate Judge, demonstrate clear error. Therefore, I overrule this objection.

### 2.  Motion to Partially Seal

Both the First Amendment and the common law afford the right to access to judicial proceedings. *See Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310–11 (11th Cir. 2001). These rights to access, which are not absolute, do not include the right to inspect discovery material. *See id.* at 1310–12; *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) ("The right of access does not apply to discovery."); *United States v. Nickens*, 809 F. App'x 584, 591 (11th Cir. 2020) (per curiam) ("Discovery materials, however, do not fall within the scope of either the First Amendment or the common law right of access."). Therefore, to shield discovery materials from public access, the party seeking protection need only supply "good cause." FED. R. CRIM. P. 16(d)(1); *see Chicago Trib.*, 263 F.3d at 1310–13; *Nickens*, 809 F. App'x at 592.[8]

---

[8] The Eleventh Circuit has concluded that "discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right." *Chicago Trib. Co.*, 263 F.3d at 1312. According to the Magistrate Judge, "the Eleventh Circuit has not

"[A] party should not seek to seal information that is already public," *OJ Com., LLC v. KidKraft, Inc.*, 34 F.4th 1232, 1241 (11th Cir. 2022), yet according to the Magistrate Judge, that is exactly what Snap seeks to do, *see* MTQ Order at 24–30. Snap objects and argues that the Magistrate Judge "misconstrued the information Snap seeks to redact as already in the public domain." MTQ Objs. at 17.

Even if Snap is correct in its objection, the Magistrate Judge proceeded to consider whether, even assuming Snap sought to seal private information, good cause supported Snap's motion. *See* MTQ Order at 30. The Magistrate Judge concluded no: Snap seeks to seal a declaration, along with references to it, describing in broad terms Snap's encryption practices and supports its request with "generalized averments regarding a potential increase in illicit conduct and harm to its reputational and business interests that disclosure of the challenged information might pose." *Id.* at 32–34. The Magistrate Judge also concluded that "the public's

---

squarely confronted whether the First Amendment right of access applies to a pretrial discovery motion filed in a criminal prosecution." MTQ Order at 20; *see United States v. Trump*, No. 23-80101-CR, 2024 WL 1542974, at *5 (S.D. Fla. Apr. 9, 2024) (Cannon, J.) ("The Eleventh Circuit has not specifically addressed the instant question: whether, in a criminal proceeding, the First Amendment qualified right of access attaches to discovery materials referenced or attached in support of a publicly filed Rule 12(b) motion to compel discovery under Rule 16."). Neither party, though, has objected to the Magistrate Judge's application of the "good cause" standard governing discovery material, *see* MTQ Order at 32, and thus I proceed on the assumption that this standard governs.

interest in Snap's encryption policies" cuts against Snap's request to seal. *Id.* at 34–
35.

Snap takes issue with the Magistrate Judge's weighing of these factors and
emphasizes the safety risks it foresees and the decreased public interest in discovery.
MTQ Objs. at 21–24. Although some of Snap's arguments are well-taken, Rule
59(a) calls for clear error review, which is "highly deferential." *Holton v. City of
Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005); *see Nat'l Ass'n for
Advancement of Colored People, ex rel. Fla. State Conf. of Branches of NAACP v. Fla.
Dep't of Corr.*, 122 F. Supp. 2d 1335, 1337 (M.D. Fla. 2000) (The "standard for
overturning a Magistrate Judge's Order is a very difficult one to meet."); *cf. Triolo v.
United States*, No. 3:18-CV-919-J-34JBT, 2019 WL 5704659, at *1 (M.D. Fla.
Nov. 5, 2019) (A "magistrate judge is afforded broad discretion in issuing
nondispositive pretrial orders related to discovery."). After review of the Magistrate
Judge's order and Snap's objections, the Magistrate Judge did not exceed the bounds
of his discretion in denying Snap's motion to seal.

Snap also raises a First Amendment argument, contending that the
Magistrate Judge is compelling it to speak by denying the motion to quash. MTQ
Objs. at 24–25. Snap did not raise a First Amendment argument to the Magistrate

31

Judge, and it has not substantiated its argument with case law from this context. Snap's argument is therefore no reason to set aside the Magistrate Judge's decision. *See Williams*, 557 F.3d at 1292.

## IV.    CONCLUSION

Accordingly, the following is **ORDERED:**

1.    Ambrose's Objections (Doc. 177) are **OVERRULED**.

2.    Snap's Objections (Doc. 233) are **OVERRULED**.

3.     In accordance with the Magistrate Judge's Order, (Doc. 227) at 68–69, the clerk is directed to **UNSEAL** (Docs. 58, 71, 73, 150, 152, 156, 161, 162, 167, 179, 180, 183, 199-1, 226, 227, and 233).

4.    In the light of the above rulings and the parties' earlier Joint Notice (Doc. 55), the parties must submit a joint notice no later than **June 20, 2025**, with proposed dates for an evidentiary hearing on the motion to suppress and the estimated length of time.[9]

**ORDERED** in Tampa, Florida, on June 9, 2025.

Kathryn Kimball Mizelle
United States District Judge

---

[9] Although the Rule 17 subpoena for Sankuratripati stands, the scope of examination will be circumscribed by the arguments pressed in the motion to suppress.